George ARCE, Plaintiff,

v.

Hans G. WALKER, et al., Defendants.

No. 89–CV–1330L.

United States District Court,
W.D. New York.

Nov. 27, 1995.

Richard S. Crummins, Nixon, Hargrave, Devans & Doyle LLP, Rochester, NY, for plaintiff.

James L. Gelormini, Office of the New York State Attorney General, Rochester, NY, for defendants.

### DECISION AND ORDER

LARIMER, District Judge.

This action is brought pursuant to 42 U.S.C. § 1983. George Arce ("Arce"), a prisoner, asserts that his Due Process rights were violated when he was confined to the Special Housing Unit (SHU) for nineteen consecutive days without the opportunity for an informal hearing. He also asserts that his Due Process and 8th Amendment rights were violated when, except for one day, he was denied one hour of daily exercise outside his cell during this entire nineteen day period.

Presently before the Court are the parties' cross-motions for summary judgment. For

the reasons set forth below, plaintiff's motion for summary judgment is denied; defendants' motion is granted, and the complaint is dismissed with prejudice.

## BACKGROUND[1]

This action arises out of plaintiff's "hold-over" stay at Attica Correctional Facility in 1987. Previously a resident of the Clinton Correctional Facility, Arce was temporarily moved to Attica on December 22, 1987 so that he could attend court proceedings in Buffalo. He was returned to the Clinton facility on January 9th. During his nineteen day stay at Attica, Arce was confined to SHU. He claims that he was denied exercise privileges except for one day, December 28th.

## THE PARTIES' MOTIONS

In his present motion, Arce asserts that the nineteen day SHU confinement without opportunity to be heard deprived him of a liberty interest conferred by the Due Process clause of the 14th Amendment. It is not his placement in SHU, *per se*, that Arce complains of, but rather that he was detained there for an extended period without a hearing of any kind. Arce asserts that he should have been entitled to at least an informal hearing within 7 to 10 days.

Arce also asserts that the defendants' refusal to provide him daily exercise outside his cell deprived him of a liberty interest created by state regulation, specifically 7 NYCRR 301.5, which states that prisoners shall be "permitted to exercise outside [their] cell for at least one hour each day...."

Finally, Arce asserts that the exercise deprivation was cruel and unusual punishment in violation of the 8th Amendment.

Defendants do not deny that Arce was confined to SHU during his stay at Attica. However, they assert that Arce's SHU assignment was an ordinary and required administrative procedure for "hold over" pris-

oners—*i.e.*, those individuals temporarily housed at another facility. The purpose for the SHU confinement was not punitive. The procedure was used because Attica officials do not have enough information about such transferred prisoners whose stay is typically of short duration to determine if they pose a danger to the prison community at large or would be in danger themselves from others in the community. Defendants contend that no liberty interest is implicated by this procedure.

Defendants dispute Arce's factual allegations pertaining to the exercise deprivation claim. They assert that Arce was offered outdoor exercise every day, but refused to take it. Nonetheless, even if Arce's allegations were true, defendants assert that such actions would constitute neither a liberty interest deprivation nor a violation of Arce's 8th Amendment rights.[2]

## DISCUSSION

### A. Summary Judgment Standards

■ Summary judgment shall be granted if the pleadings and supplemental evidentiary materials "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). No genuine issue of material fact exists if "the record as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

■ The burden of showing the absence of any genuine issue of material fact rests on the moving party, *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986), and all ambiguities and inferences that may reasonably be drawn from the facts must be viewed in the light most favorable to the non-moving party.

---

**1.** Only the facts relevant to my determination are set forth herein. For purposes of this determination I am accepting the plaintiffs' allegations as true.

**2.** Defendants raise additional defenses to both of plaintiff's claims—*i.e.*, qualified immunity and failure to allege the personal involvement of all the defendants. Because defendants' motion is granted on the merits, it is unnecessary for me to address these additional defenses.

*Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970).

In this case, for the purpose of analyzing defendants' motion for summary judgment, I will accept all of Arce's allegations as true concerning his confinement and his denial of exercise.

**B. *Deprivation of a "Liberty Interest"***

■ To state a § 1983 claim Arce must show that he possessed a liberty or property interest protected by the United States Constitution or federal statutes and that, without due process, he was deprived of that interest. *See Green v. Bauvi,* 46 F.3d 189, 194 (2d Cir.1995). A liberty interest may be implicated in appropriate circumstances by either a federal or state statute or by the United States Constitution itself. *See Lee v. Coughlin,* 902 F.Supp. 424, 430 (S.D.N.Y.1995) ("liberty interests protected by the Due Process clause may arise from either the Due Process clause itself or from the laws of the states") *citing Sandin v. Conner,* — U.S. —, —, 115 S.Ct. 2293, 2300, 132 L.Ed.2d 418 (1995).

■ As noted, Arce asserts that his nineteen day detention in SHU, without being given the opportunity to be heard, violated his constitutional Due Process rights. Arce does not assert that the liberty interest arose as the result of a state law or regulation prohibiting extended confinement without a hearing, but rather was implicated by the Due Process clause alone. Arce relies heavily on dicta contained in *Wright v. Smith,* 21 F.3d 496, 499 (2d Cir.1994), where the court stated that "[i]t is arguable that ... the Fourteenth Amendment itself creates a liberty interest in not being kept in restrictive confinement within a prison for an extended period of time without any hearing."

Unfortunately for Arce, the analysis of what constitutes a liberty interest was transformed significantly by the Supreme Court's decision *Sandin v. Conner, supra,* decided this past June. Thus, discussion of cases that predate *Sandin* is of limited use.

In *Sandin v. Conner,* the United States Supreme Court expressly determined that neither Hawaii state regulations nor the Due Process clause created a liberty interest for a prisoner in avoiding thirty days' disciplinary confinement in SHU. The Court found that state regulations can create a liberty interest only where a restraint imposes "atypical and significant hardship on an inmate in relation to the ordinary incidents of prison life." *Sandin* at —, 115 S.Ct. at 2300.

This definition marks a dramatic departure from years of precedent at least since the Supreme Court's decision in *Hewitt v. Helms,* 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983). *See Rodriguez v. Phillips,* 66 F.3d 470, 480 (2d Cir.1995). Prior to *Sandin* the question of whether a state regulation created a liberty interest depended on whether the language of the regulation was "of an unmistakably mandatory character" as opposed to a mere "procedural guideline." *Sandin, citing, Hewitt, supra.* In other words, the question was whether the regulation required that certain procedures "shall", "will" or "must" be employed. *See Rodriguez,* at 479. This, the *Sandin* Court concluded, was an incorrect focus.

By shifting the focus of the liberty interest inquiry to one based on the language of a particular regulation, and not the nature of the deprivation, the Court encouraged prisoners to comb regulations in search of mandatory language on which to base entitlements to various state-conferred privileges. Courts have, in response, and not altogether illogically, drawn negative inferences from mandatory language in the text of prison regulations. *Id.* — U.S. at —, 115 S.Ct. at 2299.

In *Sandin* the Court refocused this examination to measure the "nature of the deprivation," *i.e.,* is the deprivation a significant departure from ordinary prison conditions? Thus, *Sandin* eroded prisoners' ability to rely on the mandatory nature of language in state statutes or regulations. It is now the nature of the deprivation that matters. *See Malsh v. Austin,* 901 F.Supp. 757 (1995) ("After Sandin ... the inquiry must focus not on the mandatory nature of a State's rule governing the imposition of the deprivation, but rather on the nature of the deprivation itself.")

*Sandin* did acknowledge that there were certain limited circumstances where the Due Process clause created a liberty interest in avoiding certain prison conditions that might result in exceeding the original sentence or which or are "qualitatively different" from ordinary prison conditions and have "stigmatizing consequences." *Id.* —— U.S. at ——, 115 S.Ct. at 2297. Citing cases where a prisoner was involuntarily transferred to a mental hospital for treatment of a mental disease (*see Vitek v. Jones,* 445 U.S. 480, 100 S.Ct. 1254, 63 L.Ed.2d 552 (1980)) or involuntarily given psychotropic drugs (*see Washington v. Harper,* 494 U.S. 210, 110 S.Ct. 1028, 108 L.Ed.2d 178 (1990)), the Court acknowledged that certain liberty interests can be impinged regardless of state regulation. However, the Court clearly did not consider thirty days of punitive SHU confinement to rise to this level. In the opinion's final paragraph the Supreme Court concluded that "neither the Hawaii prison regulation in question, nor the Due Process clause itself, afforded [the plaintiff] a protected liberty interest that would entitle him to the procedural protections set forth in *Wolff [v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974)]." *Sandin,* —— U.S. at ——, 115 S.Ct. at 2301.

Following the holding and spirit of the *Sandin* decision, as I must, I find that Arce's nineteen day administrative confinement in SHU did not deprive him of a liberty interest conferred by the Due Process clause of the 14th Amendment. Such administrative confinement is not outside the realm of normal prison conditions. It does not "exceed the sentence in such an unexpected manner as to give rise to protection by the Due Process clause of its own force." *Sandin* at ——, 115 S.Ct. at 2299. I find no compelling distinction between the thirty days SHU confinement endured by the plaintiff in *Sandin,* which the Supreme Court expressly found to be insufficient to implicate a due process

deprivation, and Arce's nineteen day confinement. Nothing Arce has alleged is so egregious as to meaningfully distinguish this case.[3] Thus, Arce's claim for unlawful SHU confinement is dismissed. *See also Lee v. Coughlin,* 902 F.Supp. 424 (S.D.N.Y.1995) (No liberty interest implicated by the Due Process clause in prison context unless confinement is "qualitatively different" from typical punishment and has "stigmatizing consequences"); *Uzzell v. Scully,* 893 F.Supp. 259 (S.D.N.Y.1995) (no liberty interest in avoiding keeplock confinement because it is not atypical and significant).

■ I also find that *Sandin* effectively extinguishes Arce's exercise deprivation claim. While the language of the New York state regulation (7 NYCRR 301.5) unmistakably requires that prisoners be permitted one hour of exercise outside their cell every day, the failure to do so for a period of nineteen days (actually six days and then twelve days) does not "impose atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin,* —— U.S. at ——, 115 S.Ct. at 2300. "Lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *Id.* at ——, 115 S.Ct. at 2301, *citing Jones v. North Carolina Prisoners Labor Union,* 433 U.S. 119, 125, 97 S.Ct. 2532, 2538, 53 L.Ed.2d 629 (1977). Exercise deprivation for several days is surely not of such moment as to constitute a Due Process deprivation. Thus, Arce's claim of exercise deprivation is dismissed as well.

### C. *The 8th Amendment*

■ Finally, I find that the failure to have exercise outside one's cell for 6 six consecutive days, and then for 12 consecutive days, does not constitute an 8th Amendment violation. It is well established that an 8th Amendment violation occurs only where

---

**3.** Notwithstanding the fact that Arce's SHU confinement was 11 days shorter than the prisoner's in *Sandin,* Arce points to the combined effects of the nineteen day segregation plus exercise deprivation and verbal harassment, as distinguishing his circumstances from those of the prisoner in *Sandin.* Additionally, Arce distinguishes his case from *Sandin* by noting that *Sandin* involved pu-

nitive segregation and his case involves administrative segregation.

I do not find Arce's conditions of confinement to be markedly more severe than those of the plaintiff in *Sandin.* Indeed, the duration is less severe. Nor do I find the distinction between administrative and punitive confinement to be of any consequence in these circumstances.

there is an "unnecessary and wanton infliction of pain." *Wilson v. Seiter,* 501 U.S. 294, 297, 111 S.Ct. 2321, 2323, 115 L.Ed.2d 271 (1991). It can hardly be asserted that the defendants' failure to provide exercise (assuming this to be true) constituted unnecessary and wanton infliction of pain. Arce does not assert that he suffered any pain. And there was no "malicious and sadistic" application of force by the defendants. *See Maguire v. Coughlin,* 901 F.Supp. 101, 104 (N.D.N.Y.1995), *citing, Hudson v. McMillian,* 503 U.S. 1, 6–7, 112 S.Ct. 995, 998–999, 117 L.Ed.2d 156 (1992). Arce's 8th Amendment claim is also dismissed.

## CONCLUSION

For all the above reasons, I hereby DENY the plaintiff's motion for summary judgment (# 103) and GRANT the defendant's cross-motion for summary judgment (# 110). Plaintiff's complaint is dismissed with prejudice.

IT IS SO ORDERED.