**Gregory LUCAS, Plaintiff,**

v.

**NEW YORK CITY, et al., Defendants.**

**No. 93 Civ. 3367.**

United States District Court,
S.D. New York.

Jan. 21, 1994.

---

City of New York Law Dept., New York City, for defendant New York City (Awo Sarpong, of counsel).

Armienti, Brooks, Lubowitz, Debellis & Dunphy, New York City, for defendant New York City Housing Authority (Michael Armienti, of counsel).

Gary A. Tomei, New York City, for defendant Chambers.

## MEMORANDUM AND ORDER

STANTON, District Judge.

*Pro se* plaintiff Gregory Lucas sues the City of New York ("City"), the New York City Housing Authority ("NYCHA") Police, and former NYCHA Police Officer Ronald Chambers [1] ("Chambers") under 42 U.S.C. §§ 1981, 1983, and 1985, alleging violations of the First, Fourth, Eighth and Fourteenth Amendments during his arrest on August 5, 1990.

Defendant City moves to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), contending that the New York City Housing Authority and its police are separate and independent from the City of New York, and that the complaint fails to allege facts sufficient to ground a claim "that the City has a municipal policy of failing to train or supervise" the officer or officers involved, as a basis for liability in this case. (City's Mem.Supp.Mot.Dismiss at 6.) Lucas, NYCHA, and Chambers oppose the City's motion.

### Discussion

1. *Section 1983*

Under § 1983 a municipality may not be held liable for the wrongful conduct of even its own agents or employees on the theory of *respondeat superior.* *Monell v. Dep't of Social Servs.,* 436 U.S. 658, 691–95, 98 S.Ct. 2018, 2036–38, 56 L.Ed.2d 611 (1978). To hold a municipality responsible under § 1983, a plaintiff must establish: "(1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Batista v. Rodriguez,* 702 F.2d 393, 397 (2d Cir.1983). *See Pemb-*

Gregory Lucas, pro se plaintiff.

---

1. Chambers is presently employed by the City of    New York.

*aur v. City of Cincinnati,* 475 U.S. 469, 480, 106 S.Ct. 1292, 1298, 89 L.Ed.2d 452 (1986) (*"Monell* reasoned that recovery from a municipality is limited to acts that are, properly speaking, acts 'of the municipality'—that is, acts which the municipality has officially sanctioned or ordered.").

█ Plaintiff argues that Section 35.30 of the New York Penal Law, which authorizes the police to use force to make an arrest, provides the basis for *Monell* liability. The statute states, in pertinent part:

A police officer or a peace officer, in the course of effecting or attempting to effect an arrest, or of preventing or attempting to prevent the escape from custody, of a person whom he reasonably believes to have committed an offense, may use physical force when and to the extent he reasonably believes such to be necessary to effect the arrest, or to prevent the escape from custody, or to defend himself or a third person from what he reasonably believes to be the use or imminent use of physical force ...

However, a grant of discretion to the police to use reasonable force to effect an arrest does not, without more, support a finding of municipal liability. *See Pembaur,* 475 U.S. at 481–82, 106 S.Ct. at 1299 (plurality opinion) ("The fact that a particular official— even a policymaking official—has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion."); *(WRCHE) Radio Christ Hispanic Evangelic, Inc. v. Guiterrez,* No. 88–1425, 1990 WL 115594, at *4 (N.D.Ill. Aug. 7, 1990) ("If according discretion to a city employee is a policy, then *Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) stands on its head and respondeat superior becomes the rule in § 1983 cases."); *Dawes v. Pellechia,* 688 F.Supp. 842, 846 (E.D.N.Y.1988) ("Although the individual officers have discretion in the conduct of high-speed chases, that fact alone will not render the municipality liable. Because the power to establish a policy regarding high speed chases [is] entrusted to the Police Department, an individual officer's exercise of his discretion pursuant to that poli-

cy, even if exercised in an unconstitutional manner, is an act of the officer, not the municipality").

█ Municipalities are liable under § 1983 where their failure to train their police amounts to deliberate indifference to the rights of persons with whom the police come in contact. *City of Canton v. Harris,* 489 U.S. 378, 387, 109 S.Ct. 1197, 1204, 103 L.Ed.2d 412 (1989); *Walker v. City of New York,* 974 F.2d 293, 297–99 (2d Cir.1992), *cert. denied,* —— U.S. —— & ——, 113 S.Ct. 1387 & 1412, 122 L.Ed.2d 762 & 784 (1993).

Lucas makes a direct claim against "New York City for its employment of officers with propensity for violence and negligence in training and supervision." (Complaint ¶ 14.) Although the complaint does not detail the City's involvement in the alleged unlawful conduct, Lucas' opposition papers dated September 13, 1993, state that he

was surrounded by New York City Police while the defendant Ronald Chambers # 2816 brutalized the plaintiff ... being that N.Y.C.P.D. was at the scene where the police brutality took place at against the plaintiff and did nothing to prevent the assault against the plaintiff's person makes the ... City of New York liable for the actions of their officers and for N.Y.C.P.D. to have such a great number of officers at the scene supports plaintiff's allegations.

█ Although normally "a single incident of errant behavior is an insufficient basis for finding that a municipal policy caused plaintiff's injury," *Sarus v. Rotundo,* 831 F.2d 397, 402–03 (2d Cir.1987) (citing *Oklahoma v. Tuttle,* 471 U.S. 808, 824, 105 S.Ct. 2427, 2436, 85 L.Ed.2d 791 (1985) (plurality opinion); *id.,* 471 U.S. at 833, 105 S.Ct. at 2441 (Brennan, J., concurring)), from the presence of a considerable number of police, all of whom act in similar fashion, it may be reasonable for a trier of fact to infer that they were trained to act that way. The Court of Appeals for this Circuit has stated that " 'a single, unusually brutal or egregious beating administered by a group of municipal employees may be sufficiently out of the ordinary to warrant an inference that it was attributable to inadequate training or super-

vision amounting to deliberate indifference or "gross negligence" on the part of officials in charge.'" *Sorlucco v. New York City Police Dep't,* 971 F.2d 864, 873 (2d Cir.1992) (quoting *Turpin v. Mailet,* 619 F.2d 196, 202 (2d Cir.1980)); *Hodge v. Ruperto,* 739 F.Supp. 873, 877–78 (S.D.N.Y.1990).

When deciding a motion to dismiss under Fed.R.Civ.P. 12(b)(6),

> a district court must construe any well-pleaded factual allegations in the complaint in favor of the plaintiff, and may dismiss the complaint only where " 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' " This caution applies with greater force where the complaint is submitted *pro se* or the plaintiff alleges civil rights violations.

*Sykes v. James,* No. 92–7949, slip op. 735, 742, 13 F.3d 515, 519 (2d Cir. Dec. 30, 1993) (citations omitted); *Branum v. Clark,* 927 F.2d 698, 705 (2d Cir.1991).

Construing the complaint liberally, *see Haines v. Kerner,* 404 U.S. 519, 520–21, 92 S.Ct. 594, 595–96, 30 L.Ed.2d 652 (1972) (per curiam), and construing Lucas' opposition papers as part of the complaint,[2] plaintiff alleges that he was surrounded by a group of New York City police officers who stood by while he was "brutalized" by Chambers. Plaintiff has thus alleged behavior by a group of New York City police officers that supports an inference of inadequate training or supervision.

**2.  *Sections 1981 and 1985***

■ Even liberally construed, however, the complaint fails to allege facts sufficient to support claims under §§ 1981 and 1985. The Court of Appeals for the Second Circuit has stated that:

> [t]o establish a claim under § 1981, a plaintiff must allege facts in support of the following elements: (1) the plaintiff is a member of a racial minority; (2) an intent

to discriminate on the basis of race by the defendant; and (3) the discrimination concerned one or more of the activities enumerated in the statute (i.e., make and enforce contracts, sue and be sued, give evidence, etc.).

*Tuaha Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.,* 7 F.3d 1085 (2d Cir.1993). Lucas does not allege facts in support of any of those elements. Furthermore, according to the Court of Appeals,

> [t]he four elements of a § 1985(3) claim are: (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of equal protection of the laws, or of equal privileges and immunities under the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right of a citizen of the United States. Furthermore, the conspiracy must also be motivated by "some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action."

*Id.* at 1087–88 (citations omitted). The complaint is devoid of any allegation of a "class-based, invidious discriminatory animus;" it thus fails to state a claim under § 1985(3).

The complaint against the City under §§ 1981 and 1985 is dismissed with leave to amend within thirty days of the date of this order.

### Conclusion

The City's motion to dismiss plaintiff's § 1983 claim is denied. Defendant City's motion to dismiss plaintiff's claims under §§ 1981 and 1985 is granted with leave to amend within thirty days of the date of this order.

So ordered.

---

**2.**  *See Gill v. Mooney,* 824 F.2d 192, 195 (2d Cir.1987) (in reviewing district court's dismissal of *pro se* plaintiff's § 1983 claim, court considered plaintiff's affidavit submitted in opposition to defendant's motion to dismiss); *Donahue v. United States Dep't of Justice,* 751 F.Supp. 45, 49 (S.D.N.Y.1990) ("The Court's duty to adopt a generous attitude when evaluating a *pro se* complaint supports the Court's decision to consider the allegations in the [plaintiffs'] opposition papers. The policy reasons favoring liberal construction of *pro se* pleadings warrant the Court's consideration of the allegations contained in plaintiffs' memorandum of law, at least where those allegations are consistent with the allegations in the complaint").